**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5596-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDWARD O. MCKINNEY,
a/k/a EDDIE O. MCKINNEY,

     Defendant-Appellant.

_____

Submitted January 25, 2021 – Decided March 8, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 12-03-0170.

Joseph E. Krakora, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (David M. Galemba, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the June 13, 2019 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. We affirm.

After a jury trial, defendant was convicted of two counts of first-degree robbery, N.J.S.A. 2C:15-1, third-degree terroristic threats, N.J.S.A. 2C:12-3(b), and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e). He was sentenced to an aggregate prison term of forty-five years with an eighty-five percent parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

We affirmed the convictions but remanded to the trial court for resentencing. State v. McKinney, No. A-5379-12 (App. Div. Nov. 30, 2015) (slip op. at 14). On remand, the court sentenced defendant to an aggregate twenty-year term subject to NERA.

Defendant appealed from the resentence. We affirmed. State v. McKinney, No. A-2235-15 (App. Div. May 4, 2016) (slip op. at 1).

Thereafter, defendant filed a petition for PCR. He raised several contentions of ineffective assistance of counsel, including that he was not properly represented during the plea stage of the proceedings. The petition was denied.

On appeal, this court reversed and remanded for an evidentiary hearing only to determine the issue of whether defense counsel was ineffective in failing to alert the court of defendant's desire to accept the reduced plea offer. State v. McKinney, No. A-1256-17 (App. Div. Dec. 18, 2018) (slip op. at 9).

The trial court held an evidentiary hearing in April 2019 during which two attorneys testified regarding their representation of defendant in the criminal proceedings. Defendant testified as well.

We rely on the facts presented in our earlier decision regarding the circumstances surrounding the plea offers. Id. at 1-3. We provide these additional facts elicited during the evidentiary hearing.

Leslie McNair-Jackson was admitted to the bar in 2000 and had been employed at the Office of the Public Defender since 2003. She described defendant as "very involved" in his case, and they frequently communicated by correspondence and telephone, and during jail visits. McNair-Jackson documented any important information, and she had those records with her during the hearing.

According to McNair-Jackson, the State's initial plea offer was eighteen years in prison subject to NERA. At the pretrial conference, the State reduced its offer to ten years, subject to NERA. She explained the plea to defendant but

3

he was not interested in the offer.  McNair-Jackson noted in her paperwork that defendant "did not want anything involving [eighty-five] percent."  She said defendant "either wanted a three with a three, or [eighteen months], do [eighteen months]."  Defendant told counsel he wanted a sentence for a fourth-degree offense with county jail time despite being charged with a first-degree crime.

McNair-Jackson reviewed the Pretrial Memorandum with defendant, explained his sentencing exposure[1] and NERA,[2] and advised him of the possibility of consecutive sentencing due to multiple victims.  Counsel stated she also explained the plea cutoff rule.  McNair-Jackson stated defendant appeared to understand their conversation.  He did not indicate he did not understand the consequences of going to trial.

During the pretrial conference on July 13, 2012, the trial judge informed defendant of the ten-year plea offer and told him it was the last day to accept it. Defendant acknowledged that he understood the State's ten-year plea offer expired that day, and that he could be sentenced up to life in prison if convicted

---

[1]  According to McNair-Jackson, defendant was exposed to a ten to twenty-year sentence on the robbery charges.  He also was eligible for an extended term as a persistent offender and she told defendant he could be sentenced to life in prison.

[2]  Counsel testified she had explained NERA to defendant "[v]ery early on in the case[.]"

A-5596-18

due to his lengthy criminal record that made him eligible for an extended term. The case was scheduled for trial the following month.

McNair-Jackson was aware of the judge's policy to enforce the plea cutoff. She said the judge would not permit a plea after the cutoff date just for "a change of heart." In her experience, something had to change on the part of the State, such as witness unavailability, for the judge to accept a plea after the cutoff date.

As McNair-Jackson prepared for trial, she found an issue in the grand jury proceedings that made her "uncomfortable[.]" Since the time for dispositive motions had expired, McNair-Jackson spoke to her supervisor and alerted the assistant prosecutor of the grand jury issue. She also wrote a letter to the judge on July 17, 2012, requesting permission to supplement her prior motion to dismiss and an opportunity to renew plea negotiations with the State.

After several discussions, the assistant prosecutor told McNair-Jackson he could extend a final plea offer of five years with eighty-five percent parole ineligibility. Counsel conveyed the offer to defendant in a July 20 letter, adding "I know that you may not be interested, but I am obligated to advise you of any new [p]lea offers." McNair-Jackson told the court she included that language because "during the pendency of this case from [a]rraignment to the [pretrial

A-5596-18

conference], [defendant] made it very clear that he wasn't interested in anything that carried an [eighty-five] percent [parole disqualifier]."

On August 1, 2012, McNair-Jackson spoke to the assistant prosecutor who confirmed that the State's best offer was going to be the "five, [eighty-five]." She also inquired about witness availability and used an investigator to confirm that the witnesses were in fact available to testify.

On August 2, McNair-Jackson visited defendant in jail to discuss the new plea offer. She presented him with his options and explained his exposure so he could "make an intelligent decision of his own choosing." McNair-Jackson said defendant "wasn't interested in the five, [eighty-five]." He wanted the "[s]ame thing" as before; namely, a "fourth-degree." She memorialized the conversation in her notes.

Later that month, either just before or on the day of the scheduled trial, defendant changed his mind about the State's plea offer. McNair-Jackson and the assistant prosecutor approached the judge in chambers about pleading the case off the trial list. Although McNair-Jackson "tried" to articulate a change in circumstances, the judge denied defendant's request to accept the plea offer because he did not think there was a sufficient change of circumstances.

6

McNair-Jackson advised defendant accordingly. The trial did not begin that day.

On December 7, 2012, defendant sent a letter to McNair-Jackson "asking for a no show/no rec [p]lea [a]greement, credit for time that I have been in here, and three years . . . with no [eighty-five] percent[.]" McNair-Jackson testified the letter was consistent with her recollection that defendant "didn't want to touch that NERA [s]entence."

In January 2013, defendant's case was assigned to an experienced pool counsel, Steven Ragland. Ragland testified he was aware of the history of plea negotiations from his review of the file and that counsel had attempted to accept a five-year NERA plea. He also knew the case was listed for trial. He informed the court that McNair-Jackson took a lot of notes so he was able to quickly learn the history of the case. He also knew the judge had not allowed defendant to plead off the trial list.

Before trial, Ragland asked the assistant prosecutor whether the five-year NERA plea offer was still available. He also spoke to defendant, who said he would take the offer. However, when counsel broached the plea offer with the court on March 19, 2013, the judge would not accept the plea. Ragland confirmed that the particular judge imposed the plea cutoff rule "[v]ery" strictly,

A-5596-18

stating "once [a case] was on the trial list, it means it was on trial list. He was going to try it."

Defendant also testified at the evidentiary hearing. He stated he had a "good relationship" with McNair-Jackson, and she "worked pretty hard for [him]." He communicated with McNair-Jackson by telephone, letter, and in-person meetings at the county jail. Defendant knew she took notes when they met or spoke on the telephone.

Defendant stated McNair-Jackson had advised him of the State's ten-year plea offer prior to the July 13, 2012 pretrial conference. In addition, he acknowledged signing the Pretrial Memorandum containing the ten-year offer. He confirmed that McNair-Jackson reviewed the Pretrial Memorandum with him, which included his acknowledgement that the filing of the Memorandum would end all plea negotiations except in extraordinary circumstances. However, he stated counsel did not tell him it would be difficult to accept a negotiated plea agreement after that date.

Defendant agreed that the plea offer was placed on the record during the pre-trial conference. He did not recall the court telling him that the State's ten-year plea offer expired that day, and that he could be sentenced up to life in prison if convicted after trial because his lengthy criminal record made him

8

eligible for an extended term. However, when he was shown the transcript from the conference, he agreed the judge had informed him of that information.

Defendant stated McNair-Jackson wrote him a letter on July 20, 2012, advising she had negotiated a plea offer of five years with an eighty-five percent parole disqualifier after she found an error the prosecutor made during the grand jury proceedings. Defendant said he wanted to accept the offer and he wrote counsel a letter to that effect; however, he could not provide any evidence to support his assertion. He did not recall telling McNair-Jackson that he wanted an eighteen-month sentence and "street time" as documented in McNair-Jackson's notes. Defendant admitted McNair-Jackson asked the court to allow defendant to accept the five-year NERA plea offer; however, the court said "it was too late."

In discussing Ragland, defendant stated he had a "good relationship." He stated he told Ragland several times that he wanted to take the five year plea offer. He was present when Ragland asked the court to entertain a plea.

The PCR judge denied defendant's petition in a thorough written decision and order on June 13, 2019. Although she found "[a]ll three witnesses were credible, each testifying to the best of [their] recollection about the events and conversations that occurred prior to trial[,]" the judge noted McNair-Jackson

9

provided the most specific information both from her recollection and in her reference to records from the file.

In her analysis, the judge recognized the Strickland[3] standard and used the three-factor Lafler[4] test, applicable here where defendant claimed ineffective assistance of counsel led him to reject a plea offer and go to trial. In considering Lafler, the PCR court found that defendant had failed to demonstrate he was willing to accept the State's revised plea offer. The judge noted that when presented with the offer of a ten-year sentence subject to NERA, defendant "declined the offer and told his attorney that he wanted an offer that would allow him to plead to a fourth[-]degree offense with county jail time or an offer of 'three do three.'" When McNair-Jackson advised defendant that she had succeeded in reducing the State's offer to five years subject to NERA, the judge found there was no evidence that defendant responded to her letter. To the contrary, the PCR court noted, when counsel met defendant at the jail on August 2, 2012, "he told her that the offer was too high and that he would only take a plea to a fourth[-]degree crime with [eighteen] months and street time." The court stated defendant's response was documented in counsel's file. And even

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

[4] Lafler v. Cooper, 566 U.S. 156 (2012).

A-5596-18

though defendant did not recall making this statement to McNair-Jackson, he acknowledged that he might have. The judge found that defendant's "lack of interest" in the reduced offer was "further demonstrated by his letter to counsel on December [7], 2012[,]" in which he was still requesting a "'no show, no rec plea agreement with credit for time served and three years . . . with no [eighty-five percent]' requirement."

The PCR court also concluded that defendant had not shown a reasonable probability that the trial court would have accepted the revised plea offer. The PCR judge noted the Pretrial Memorandum executed by defendant informed defendant of the plea cutoff. In addition, the trial judge advised defendant at the pretrial conference that it was his last day to accept a plea offer. The PCR court concluded defense counsel did not give defendant any indication that defendant could later change his mind and accept the plea offer. In fact, McNair-Jackson knew the trial judge "was strict about enforcing the plea cut off rule."

Nevertheless, the PCR court noted "counsel immediately made an effort to compel the judge to make an exception in this case." McNair-Jackson filed a supplemental motion to dismiss the indictment, which ultimately was denied several months later. She also approached the judge in chambers with the assistant prosecutor and attempted to persuade him to allow defendant to accept

the reduced offer. The judge rejected the request. Therefore, the PCR court concluded defendant "pointed to no evidence to support a conclusion that the court would have accepted the terms of the plea agreement."

The PCR judge also found that defendant had failed to show either defense counsel was deficient under Strickland. She stated that defendant failed to show "that either attorney was ineffective by failing to take appropriate action to alert the court of defendant's desire to accept the plea offer." In fact, the PCR court highlighted again defense counsel's attempts in August 2012 to convince the judge to allow defendant to accept the reduced offer "even though defendant had made clear that he wasn't interested in the offer." Trial counsel also alerted the court of defendant's desire to accept the plea prior to jury selection. The PCR court observed that defendant "was not new to the criminal justice system[,]" and was "familiar with the concepts of parole ineligibility, concurrent sentences, consecutive sentences, credit for time served and pleading guilty versus going to trial." In addition, the PCR court stated defendant "understood that the sentence imposed after trial could be more severe" than what was offered by the State. "He chose to reject the plea offer's terms and now regrets that decision." Because defendant could not demonstrate he would have accepted the plea or

that the trial court would have accepted its terms, the PCR court concluded he could not establish ineffective assistance of counsel.

Defendant presents the following argument on appeal:

> BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.
>
> a.    Legal Standards Governing Applications for PCR
>
> b.    Both Pretrial and Trial Counsel Failed to Immediately Notify the Trial Court of the New Plea Offer and were Ineffective in Seeking an Exception to the Plea Cut Off and Advocating a Material Change of Circumstances pursuant to Rule 3:9-3(g).

We apply "a deferential standard" in our review of a denial of a PCR petition following an evidentiary hearing. State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). The factual findings made by a PCR court following an evidentiary hearing will be accepted if they are based on "sufficient credible evidence in the record." Ibid. (quoting Nash, 212 N.J. at 540). This court is "not bound by and give[s] no deference to the legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 415 (2004). "[F]or mixed questions of law and fact, we give deference . . . to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." Id. at 416.

13

The standard for determining whether counsel's performance was ineffective under the Sixth Amendment was formulated in Strickland, 466 U.S. at 668, and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). To prevail on an ineffective assistance of counsel claim, defendant must meet the two-prong test establishing: (1) counsel's performance was deficient and he or she made errors so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." · Strickland, 466 U.S. at 687, 694.

In Lafler v. Cooper, the United States Supreme Court extended the Strickland test to challenges of guilty pleas grounded in ineffective assistance of counsel claims. 566 U.S. at 162-63. The Court stated: "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Id. at 168. To establish prejudice, a defendant must show "there is a reasonable probability that . . . defendant would have accepted the plea[,] . . . that the court would have accepted its terms, and that the conviction or sentence, . . . under the offer's terms would have been less severe" than that imposed after trial. Id. at 164.

14

On remand, the court conducted an evidentiary hearing and concluded that defendant had not satisfied either the <u>Lafler</u> or the <u>Strickland</u> standard of ineffective counsel. The judge set forth her factual findings and credibility determinations in substantial detail and incorporated these findings in her application of the correct legal standard in a comprehensive and well-reasoned written decision. Our own review of the record reflects the diligence and professionalism of both defense attorneys. We are satisfied the decision is supported by the substantial credible evidence in the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5596-18